UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL DALEY, et al.,

                Plaintiffs,

-against-

P.O JONATHAN GOMEZ, et al.,

                Defendants.

**OPINION AND ORDER**

23-CV-00032 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Michael Daley ("Mr. Daley") and Susanne Daley (together with Mr. Daley, "Plaintiffs") initiated this action against P.O Jonathan Gomez ("Officer Gomez"), P.O Ronnie Charles ("Officer Charles"), P.O Reggie Anderson ("Officer Anderson"), and P.O. Andrew Cole Hatchard ("Officer Cole-Hatchard" and collectively, "Defendants") on September 1, 2022 in Supreme Court of the State of New York, County of Rockland. (Doc. 1-1, "Compl.").[1] Defendants removed this action to this Court on January 4, 2023. (Doc. 1).

      Plaintiffs assert multiple claims for relief under 42 U.S.C. § 1983, for assault, excessive force, battery, illegal search and seizure, false arrest, and equal protection (Fourth Claim for Relief); and claims under State law for battery (First Claim for Relief), assault (Second Claim for Relief), excessive force and false arrest (Third Claim for Relief), and loss of consortium (Seventh Claim for Relief).[2] (*See generally* Compl.).

---

[1] The Court so-ordered the parties' stipulation of discontinuance of Plaintiffs' claims against Officer Charles and Officer Anderson on November 25, 2024. (Doc. 51).

[2] Plaintiffs did not allege a Sixth Claim for Relief (*see generally* Compl.); and the Fifth Claim for Relief for failure to intervene was discontinued by the parties' stipulation dismissing claims against Officer Charles and Officer Anderson on November 25, 2024 (Doc. 51).

Defendants filed their motion for summary judgment in accordance with the briefing schedule set by the Court. (Doc. 43; Doc. 44, "56.1"; Doc. 45, "Jones Aff."; Doc. 46). Plaintiffs opposed Defendants' motion (Doc. 47, "Giordano Aff."; Doc. 48, "Pl. Br."), and the motion was fully briefed with the filing of Defendants' reply papers (Doc. 49).

For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement and Plaintiffs' responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the following facts are undisputed.

Mr. Daley lived in the Hillcrest Point Apartments ("Hillcrest") from April 1999 to January 2021. (56.1 ¶ 1). He served as Secretary of the Board at Hillcrest from May 2019 until some time in 2020. (Giordano Aff., Ex. 8 ¶ 6). Mr. Daley and his family lived in Hillcrest until some point in time, when according to Mr. Daley, a water problem caused a mold condition in the apartment such that the family slept at a location in Woodbury, New York, in June 2021. (*Id.*, Ex. 8 ¶ 2). Mr. Daley maintained an interest in the Hillcrest apartment and was residing there as recently as September 1, 2024. (*Id.*).

On or about June 11, 2021, a police officer was dispatched to Hillcrest; Defendants state that the officer was dispatched because of the Board President Pamela Alexander's report of Mr. Daley's harassment of an elderly woman. (56.1 ¶ 7; Giordano Aff., Ex. 8 ¶ 10; Jones Aff., Ex. 14 ¶¶ 3, 4).[3] After the officer, John Dziedzic of the Spring Valley Police Department, interviewed Ms. Alexander and Sasha Brewer-Mews, an employee of the Hillcrest office, he called Mr. Daley regarding the complaints that had been made. (56.1 ¶¶ 8-11; Jones Aff., Ex. 14 ¶¶ 6, 8, 9, 12-15; Giordano Aff., Ex. 8 ¶ 19).

Mr. Daley, also on June 11, 2021, posted an Instagram live video in which he states, among other things, that: "I'm a gun owner and I'll blow your head off if you come at me"; "if one more person steps to me I'm going to put a bullet in them"; "if I go to jail again it's going to be for a

---

[3] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." *Id.* at 56.1(d). Plaintiffs, who are represented by counsel and previously had and took an opportunity to amend their responses to the 56.1 Statement (*see* Aug. 26, 2024 minute entry; Doc. 38), did not comply with Local Civil Rule 56.1 in many respects, including failing to cite to admissible evidence showing a disputed material fact. Specifically, Plaintiffs' responses to the Rule 56.1 Statement that deny Defendants' statements of fact include over 40 citations to "Exhibit A." (*See* 56.1 ¶¶ 7-11, 14, 17, 21, 25-28, 30, 37, 38, 40-44, 46-51, 59, 64, 65, 67-70, 77, 78, 85, 92-94, 96, 97). No such document exists in the record. Both Defendants and Plaintiffs used numbering for their exhibits on this motion (*see* Jones Aff.; Giordano Aff.), and the document annexed as the first exhibit to the Giordano Aff. (*i.e.*, Exhibit 1), cannot possibly be the document to which Plaintiffs refer in these responses as the content in the paragraph citations have no relation at all to the facts to which they respond. It does appear quite possible that the references to "Exhibit A" are to Mr. Daley's declaration (Giordano Aff., Ex. 8), but the Court cannot and will not invent disputes of material fact based upon this Rule 56.1 Statement and the record upon which it is based. The Second Circuit "has instructed that Local Rule 56.1 is 'strict.'" *McGowan v. Stanley*, No. 23-7769-CV, 2024 WL 5038633, at *2 (2d Cir. Dec. 9, 2024) (quoting *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009)). And "district courts are 'not required to consider what the parties fail to point out in their Local Rule 56.1 statements.'" *Id.* (quoting *T.Y.*, 584 F.3d at 417)). Under these circumstances, the Court "deem[s] admitted the facts asserted in [Defendants'] Local Rule 56.1 statement because they were not specifically controverted by [Plaintiffs] in the manner demanded by Local Rule 56.1." *Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *1 (2d Cir. Nov. 21, 2023). To the extent, however, that the record demonstrates the existence of a genuine dispute of material fact, the Court considers and takes that evidence into account herein.

real fucking reason"; "I'm a marksman"; and "I will fucking hit my target." (56.1 ¶¶ 12-13). Mr. Daley had a pistol permit which was suspended in April of 2012 following the entry of an order of protection against him. (*Id.* ¶ 3). Despite the suspension of his pistol permit, Mr. Daley owned four rifles at the time of the incident alleged in Plaintiffs' Complaint. (*Id.* ¶¶ 5, 6).

Detective Gonzalez, having seen the Instagram live video and having knowledge that Mr. Daley had a suspended pistol permit, called Mr. Daley on his cell phone on June 15, 2021 and asked that he respond to headquarters for an interview. (*Id.* ¶¶ 18-20). Mr. Daley refused. (*Id.* ¶ 20). According to Detective Gonzalez, Mr. Daley sounded extremely upset and agitated on the phone. (*Id.*). That same day, Orange County and Woodbury officers responded to the location where Mr. Daley was residing at that time, 56 DePalma Drive in Woodbury, New York, to conduct a welfare check. (*Id.* ¶¶ 2, 22).

A Board meeting at Hillcrest was scheduled to be held the next day, June 16, 2021. (Giordano Aff., Ex. 8 ¶ 7). Officer Dziedzic advised Brewer-Mews to postpone the Board meeting in light of Mr. Daley's actions, the Instagram video, and Brewer-Mews' concerns for safety. (56.1 ¶ 15). When Mr. Daley arrived at Hillcrest on June 16, 2021, presumably to attend the meeting, he saw a notice on the door of his apartment stating the meeting was cancelled. (*Id.* ¶ 33). He sent his son to retrieve a bullhorn from inside the apartment. (*Id.* ¶ 35). As Mr. Daley was locking the door to his apartment, the Board President's son, Arthur Alexander, approached and asked Mr. Daley if he had called his mother, Pamela Alexander, a "bitch." (*Id.* ¶ 36). Mr. Daley contends that because Mr. Alexander would not stop harassing him, he called the Spring Valley police. (Giordano Aff., Ex. 8 ¶ 11). Defendants contend that they were dispatched based upon a report by Pamela Alexander of a fight in progress and were warned that one of the parties was making weapon threats. (56.1 ¶¶ 37-38; Jones Aff., Ex. 16 ¶¶ 4, 6-8). The audio recording of Ms.

Alexander's call to Officer Cole-Hatchard reveals that Ms. Alexander did call on June 16, 2021 to advise that Mr. Daley had driven into Hillcrest and that Officer Cole-Hatchard advised that "we'll have an officer drive through." (Jones Aff., Ex. 13). Dispatch audio revealed that the officers were warned that one of the parties was making weapon threats. (*Id.*, Ex. 12).

Officer Gomez and Officer Cole-Hatchard arrived on scene at Hillcrest on June 16, 2021. (56.1 ¶ 39). Prior thereto, Officer Cole-Hatchard learned at a police briefing of Mr. Daley's Instagram video; and that a welfare check had recently been conducted on him. (Jones Aff., Ex. 16 ¶¶ 5, 10, 11). Defendants contend that when Officer Cole-Hatchard and Officer Gomez arrived, they observed Mr. Daley yelling, involved in a heated conversation with a crowd of five to ten people that had gathered in the Hillcrest parking lot, and that Mr. Daley was holding a bullhorn, upset, flailing his arms, and acting aggressively. (56.1 ¶¶ 40-46).[4]

Officer Gomez and Officer Cole-Hatchard placed Mr. Daley in handcuffs behind his back. (56.1 ¶¶ 52, 53). They brought Mr. Daley to the patrol vehicle approximately fifty feet away, where Officer Cole-Hatchard held Mr. Daley against the driver's side of the vehicle while Officer Gomez conducted a pat-down search of Mr. Daley's waist and pockets. (*Id.* ¶¶ 54-58). Officer Gomez did not find any weapons on Mr. Daley's person after the pat-down, but Mr. Daley did have a shotgun loaded with five bullets in his truck at the scene, under the back seat where Mr. Daley's son was sitting. (*Id.* ¶¶ 60-62). Officer Gomez directed Mr. Daley to sit in the back of the patrol vehicle.

---

[4] Mr. Daley contends that "the video" proves that he never used the bullhorn and that Defendants' account of the incident, why they responded to the scene, and what they encountered there is belied by the video recording and "unrealistic." (Giordano Aff., Ex. 8 ¶¶ 11-13). The video referenced by Mr. Daley is "Arthur Alexander's phone video" (*id.*, Ex. 8 ¶ 11), but there is no such video in the record. The video that is in the record was proffered by Defendants on their motion in chief and was taken by Mr. Daley's son. (Jones Aff., Ex. 25). That video begins with Mr. Daley against the side of the patrol car—there is not any video of the events leading up to that—and lasts for approximately twenty seconds before the camera is pointed downward and the video is of the inside of the vehicle from which it was taken. (*Id.*). When the camera is again pointed upward, Mr. Daley is inside the patrol car and no other pertinent events can be seen. (*Id.*).

(*Id.* ¶ 63). Defendants contend that Mr. Daley kept trying to push off the car, was not cooperative, and resisted being put in the back of the patrol vehicle. (*Id.* ¶¶ 64-65). Officer Cole-Hatchard contends that he reached under Mr. Daley's right armpit and pulled him back down into the back seat behind the driver's seat. (*Id.* ¶ 69). Mr. Daley contends that Officer Cole-Hatchard actually grabbed him by the handcuffs and pulled him. (Giordano Aff., Ex. 3 at 106:14-16; *id.* Ex. 8 ¶ 15). Mr. Daley was transported to the Spring Valley Police Department in the patrol vehicle. (56.1 ¶ 73). No criminal charges were lodged as it was determined to be a "mutual combatant's argument." (*Id.* ¶ 82).

This litigation followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial. . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts. . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that

summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant dismissing the complaint is proper").

## ANALYSIS

I.      First through Fourth Claims for Relief: Battery, Assault, and Excessive Force

Plaintiffs press claims for excessive force, assault, and battery under 42 U.S.C. § 1983 and state law. "With the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (citing *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)). 42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

Plaintiffs' excessive force claim is analyzed under the reasonableness standard of the Fourth Amendment. *See Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019); *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015); *McDonald v. City of Troy*, No. 18-CV-01327, 2021 WL 2232565, at *4 (N.D.N.Y. June 3, 2021) (explaining that "[t]he Fourth Amendment protects a free citizen from excessive force in the course of an arrest"). "Police officers' application

of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Conor*, 490 U.S. 386, 397 (1989)).

Analyzing whether a particular use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Calixto v. City of New York*, 778 F. App'x 59, 59-60 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396). Generally, when assessing whether a particular use of force was reasonable, "courts must look to the totality of the circumstances relating to the conduct of law enforcement officers, including the manner in which the plaintiff's alleged injuries were inflicted during the arrest." *Kayo v. Mertz*, No. 19-CV-00365, 2021 WL 1226869, at *14 (S.D.N.Y. Mar. 31, 2021); *see also Gutierrez v. New York*, No. 18-CV-03621, 2021 WL 681238, at *14 (E.D.N.Y. Feb. 22, 2021) (noting that evaluating the use of force "is fact-specific and requires balancing of various factors"). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

Here, it is undisputed that in effecting Mr. Daley's arrest, Officer Gomez and Officer Cole-Hatchard placed Mr. Daley in handcuffs behind his back. (56.1 ¶¶ 52, 53). The parties dispute the manner in which the handcuffed Mr. Daley was placed into the back seat of the patrol car: Defendants contend that Officer Cole-Hatchard pulled Mr. Daley under the right armpit into the backseat of the patrol car, while Plaintiffs contend that Mr. Daley was grabbed by the handcuffs and pulled fully into the patrol car across the back seat. Mr. Daley concedes that his "legs were

9

out" of the patrol vehicle and that when Officer Gomez told him to "sit down" in the patrol vehicle, he did not sit down in the patrol vehicle, nor did he "listen" to Officer Gomez. (Giordano Aff., Ex. 3 at 123:8-124:25; Jones Aff., Ex. 10 at 154:21-155:22). The subsequent contact that Officer Cole-Hatchard made with Mr. Daley—whether under Mr. Daley's armpit or by his handcuffs—indisputably lasted mere seconds. (Giordano Aff., Ex. 3 at 135:4-5 ("Again, I was yanked backwards. It happened in seconds.")). Mr. Daley testified that it was not until after that contact that he told Officer Cole-Hatchard that "I have two surgeries on my shoulder. You just hurt me. . . ." (*Id.*, Ex. 3 at 130:3-7). Mr. Daley did not tell Officer Gomez at any time that he had shoulder problems. (Jones Aff., Ex. 10 at 150:20-23). Viewing the facts in Plaintiffs' favor and even accepting Mr. Daley's version of the events as true, the *de minimis* use of force here was reasonable under the circumstances. *See Fifield v. Barrancotta*, 545 F. Supp. 2d 307, 310–11 (W.D.N.Y. 2008), *aff'd*, 353 F. App'x 479 (2d Cir. 2009).

Accordingly, Defendants are entitled to summary judgment dismissing the excessive force, assault, and battery claims alleged in the First through Fourth Claims for Relief.

II.     Third and Fourth Claims for Relief: Illegal Search and Seizure and False Arrest

Plaintiffs press claims for illegal search and seizure and false arrest under 42 U.S.C. § 1983 and state law. A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures is substantially the same as a claim for false arrest under New York law. *Palmieri v. Town of Babylon*, No. 06-CV-00968, 2008 WL 3155153, at *11 (E.D.N.Y. Aug. 4, 2008), *aff'd*, 355 F. App'x 486 (2d Cir. 2009). A plaintiff is required to show, for § 1983 claims of unconstitutional false arrest in New York, that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852

(2d Cir. 1996). Probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

"Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 Fed. App'x 31, 34–35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).

Under the imputed knowledge doctrine, an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but "sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (citing *United States v. Hensley*, 469 U.S. 221, 230-33 (1985)); *United States v. Canieso*, 470 F.2d 1224, 1230 n.7 (2d Cir. 1972). This rule exists because, "in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation" and "sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *Colon*, 250 F.3d at 135 (citing *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986)). It is well-settled that hearsay can be used to "establish probable cause." *Hamilton v. City of New York*, No. 15-CV-04574, 2019 WL 1452013, at *11 (E.D.N.Y. Mar. 19, 2019) (quoting *United*

11

*States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003)). If there is reason to doubt a witness's credibility, corroborating evidence can support probable cause. *See Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *5 (S.D.N.Y. July 20, 2022); *Brodie v. Fuhrman*, No. 07-CV-04212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Weyant*, 101 F.3d at 852.

Qualified immunity, in turn, shields officers from liability under Section 1983 so long as "arguable probable cause" existed "to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

Further, "where police officers have probable cause to effect a[n] arrest, they may search the suspect without a warrant incident to that arrest." *Sullivan v. City of New York*, No. 17-CV-03779, 2018 WL 3368706, at *9 (S.D.N.Y. July 10, 2018).

Here, the undisputed evidence, even when viewed in Plaintiffs' favor, is sufficient to conclude that there was probable cause—and at the very least, arguable probable cause—to arrest Mr. Daley for disorderly conduct and to search him incident to that arrest.

The New York disorderly conduct statute provides, in relevant part:

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
> 2. He makes unreasonable noise; or
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or . . .

12

> 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
> 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. . . .

N.Y. Penal Law § 240.20; *see also Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001); *Smith v. City of New York*, No. 18-CV-05079, 2021 WL 4267525, at *8–9 (S.D.N.Y. Sept. 20, 2021).

It is undisputed that when Officer Cole-Hatchard and Officer Gomez arrived at Hillcrest, they observed Mr. Daley yelling; involved in a heated conversation with a crowd of five to ten people that had gathered in the Hillcrest parking lot; and that Mr. Daley was holding a bullhorn, upset, flailing his arms, and acting aggressively. (56.1 ¶¶ 40-46). It is undisputed that Officer Cole-Hatchard was aware that, before the detainment on June 16, 2021, Mr. Daley had increased police contact and had made an Instagram video expressing his gun ownership and making threats. (*Id.* ¶ 26). It is undisputed that in Mr. Daley's June 11, 2021 Instagram video he stated, "I'm a gun owner and I'll blow your head off if you come at me"; "if one more person steps to me I'm going to put a bullet in them"; "if I go to jail again it's going to be for a real fucking reason"; "I'm a marksman"; and "I will fucking hit my target." (*Id.* ¶¶ 12-13). It is further undisputed that Officer Cole-Hatchard and Officer Gomez were warned by dispatch that one of the parties was making weapon threats. (Jones Aff., Ex. 12).[6]

Despite drawing all reasonable inferences in Plaintiffs' favor, the undisputed facts establish that it was reasonable for the officers to believe that Mr. Daley's conduct, at the very least,

---

[6] Mr. Daley consistently testified that he was the one who called the police, and he never mentioned a weapon in his call to the police "because no one had a weapon." (*See, e.g.*, Giordano Aff., Ex. 8 ¶ 13). Defendants' affidavits, corroborated by the recording in evidence on this motion, establishes that Ms. Alexander also called the police. (56.1 ¶¶ 37-38; Jones Aff., Ex. 16 ¶¶ 4, 6-8; *id.*, Ex. 13). And Mr. Daley testified that he indeed had a loaded shotgun under the back seat of his truck at the scene. (56.1 ¶¶ 60-62).

13

"recklessly creat[ed] a risk" of inconvenience, annoyance, and alarm. N.Y. Penal Law § 240.20; *see United States v. Nelson*, 500 F. App'x 90, 94 (2d Cir. 2012) ("Nelson's combative tone and abusive language, coupled with the location of the incident [outside a public market], were 'sufficient to warrant a person of reasonable caution in the belief' that Nelson was recklessly creating the relevant risks." (quoting *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008))); *see also Uzoukwu v. Krawiecki*, No. 10-CV-04960, 2016 WL 6561300, at *5–6 (S.D.N.Y. Nov. 4, 2016) (holding there was sufficient grounds for a jury to find that officers had probable cause to arrest the defendant for disorderly conduct where he was "screaming, yelling, [and] cursing," and "flailing his arms" in a public playground). Given the foregoing, reasonable officers could at least debate whether probable cause existed to arrest Mr. Daley for disorderly conduct. *See Donohue v. Marsh*, No. 19-CV-00207, 2022 WL 4111025, at *5 (E.D.N.Y. Sept. 8, 2022).

Because Mr. Daley's detention was lawful, the search of his pockets and waist was lawful pursuant to the search incident to arrest doctrine. *See Guerrero v. City of New York*, No. 12-CV-02916, 2013 WL 673872, at *4 n.3 (S.D.N.Y. Feb. 25, 2013) ("[T]o the extent that Guerrero is basing his § 1983 claim on an allegedly unreasonable search, this claim fails as well, because a search incident to a lawful arrest is *per se* reasonable."). The search was reasonable, not overly invasive, and was conducted incident to the detention. (56.1 ¶¶ 57-58). Under these circumstances, the search incident to arrest exception to the Fourth Amendment's prohibition against unreasonable searches and seizures applies. *See Schlaepfer v. City of New York*, No. 20-CV-03339, 2022 WL 4484571, at *13 (S.D.N.Y. Sept. 27, 2022) (granting summary judgment after finding that the officers had probable cause to arrest plaintiff, thereby rendering the search appropriate pursuant to the search incident to arrest exception of the Fourth Amendment).

Accordingly, Defendants are entitled to summary judgment dismissing the false arrest and illegal search and seizure claims alleged in the Third and Fourth Claims for Relief.

III.    Fourth Claim for Relief: Equal Protection

Plaintiffs include in the Fourth Claim for Relief alleged in the Complaint a reference to a violation of equal protection under the Fourteenth Amendment. (Compl. ¶ 37). "[I]t is axiomatic that [to establish an equal protection violation] a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994); *see Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("The Equal Protection Clause requires that the government treat all similarly situated people alike.").

"A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent." *Palmieri*, 2008 WL 3155153, at *16. "It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Id.* The claim cannot survive summary judgment in this case because there is no evidence that Plaintiffs were treated differently than similarly situated individuals, and no evidence exists in the record indicating any discriminatory motive by Defendants. Plaintiffs, in opposition, merely speculate that the subject arrest was "due to the personal animus of the police involved" and fail to cite any evidence or address Defendants' argument in any meaningful way. (*See* Pl. Br. at 22). This failure of proof is fatal to the claim, and it cannot survive summary judgment.

Accordingly, Defendants are entitled to summary judgment dismissing the equal protection claim alleged in the Fourth Claim for Relief.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.[7]

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 43 and close this case.

**SO ORDERED:**

Dated: White Plains, New York
June 24, 2025

_____
PHILIP M. HALPERN
United States District Judge

---

[7] The Seventh Claim for Relief alleging loss of consortium fails as a matter of law, as it is a derivative claim that does not exist separate and apart from the injured spouse's claim, and the underlying substantive claims for relief upon which this claim is based have been dismissed. *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 605 (E.D.N.Y. 1995) ("[W]here the injured spouse's underlying claims are dismissed, the claim for loss of consortium must similarly be dismissed.").